# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| JAMES L. ROSS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:17-CV-00570-L** |
| | § | |
| THE CITY OF DALLAS, TEXAS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendant City of Dallas's Motion to Dismiss Plaintiff's Third Amended Complaint Pursuant to Rule 9(b) and Rule 12(b)(6) (Doc. 14), filed April 27, 2018; and Plaintiff's Response to Defendant's Rule 9(b) and Rule 12(b)(6) Motions (Doc. 15), filed May 10, 2018. After careful consideration of the motion, briefs, pleadings, and applicable law, the court **grants** Defendant City of Dallas's Motion to Dismiss Plaintiff's Third Amended Complaint Pursuant to Rule 9(b) and Rule 12(b)(6) (Doc. 14) and **dismisses with prejudice** this action.

## I.   Factual and Procedural Background

On February 27, 2017, James L. Ross ("Plaintiff" or "Ross") filed this action against the City of Dallas, Texas ("City"), alleging claims under 42 U.S.C. § 1983 and 18 U.S.C. § 1964[1] relating to the City's foreclosure of property located at 3811 Wendelkin Street, Dallas, Texas ("Property"). The City became trustee of the Property after the Dallas County Sheriff unsuccessfully publically auctioned it, pursuant to a tax foreclosure suit Judgment signed on

---

[1] In his original and amended complaints, Plaintiff invokes 18 U.S.C. § 1961 as the statute under which he alleges RICO Act violations. In the court's Memorandum Opinion and Order dated March 30, 2018 (Doc. 12), the court advised Plaintiff that the operative statute providing civil remedies for RICO violations is § 1964. Section 1961, on the other hand, provides definitions for the Act. 18 U.S.C. § 1961 ("Definitions"). Although Plaintiff did not correctly invoke § 1964 in his Third Amended Complaint, the court will refer to Plaintiff's claim by this statute.

**Memorandum Opinion and Order – Page 1**

December 13, 2010, in a lawsuit filed by Dallas County taxing entities against multiple individuals associated with the Property to recover $26,978.10 in delinquent taxes, penalties, and interest owed between 1990 and 2009. Pl.'s Third Am. Compl., Doc. 13, Ex. 3 at 3-4. Although Ross allegedly resided on the Property starting in 1996, he was not listed as a party to the foreclosure lawsuit, for reasons that neither party has explained to the court. Ross alleges that, after the tax foreclosure lawsuit was filed, he filed a lien in the Dallas County public records for improvements valued at $39,483.90 that he made on the Property. Pl.'s Third Am. Compl. 3, ¶ 13. In March 2012, Plaintiff filed a petition in Dallas County District Court against the City, seeking a temporary and permanent injunction prohibiting the City from foreclosing on the Property, which the judge dismissed with prejudice in May 2013. Def's Sec. Mot. to Dismiss, Ex. 1, COD App. 016-17, 071. After no bids were taken on the Property at a public auction, the City, as trustee, conveyed a quitclaim deed to James Bell ("Bell") on February 26, 2015. Pl.'s Third. Am. Compl., Doc. 13-1. In November 2015, Ross was evicted. Third Amend. Compl. 4, ¶ 17.

This is the City's second motion to dismiss in this matter. The court denied as moot the City's first motion to dismiss to allow Ross to replead his §§ 1983 and 1964 claims with sufficient facts to satisfy the applicable pleading standards. Although Ross did not request to amend his pleadings prior to the court's resolution of the City's earlier motion, the court allowed Ross an opportunity to do so to ensure he had a fair opportunity to plead his claims.

The City now contends that Ross still fails to meet the applicable pleading standards in Plaintiff's Third Amended Complaint ("Amended Complaint") (Doc. 13) to avoid dismissal. The City contends that Ross's allegations regarding his § 1983 claim do not reasonably infer that the City promulgated or ratified a policy or custom that infringed upon his due process rights, as

required by the Rule 12(b)(6)[2] standard for pleading municipal liability. With respect to his § 1964 claim, the City contends that the City is a governmental entity unable to form the requisite criminal intent for the underlying RICO mail and wire fraud claims, and, further, that Ross's allegations fail to sufficiently allege with specificity that the City formed the specific fraudulent intent to commit those offenses, as required by Rule 9(b)'s[3] heightened standard for pleading claims involving fraud.

In his Amended Complaint and his Response to the City's Motion, Ross contends that his § 1983 claim is supported by factual allegations that the City knew Plaintiff resided on the Property and yet never provided him with personal notice of either the "competitive bid process sale" of the Property or any available process that would allow him to recover his investment in improvements on the Property. Third Am. Compl. 4, ¶ 19. Ross argues that the City only provided notice by newspaper publication, which violated his due process rights. Third Am. Compl. 4, ¶ 21. Regarding his § 1964 claims for mail and wire fraud, Ross argues that he has sufficiently pleaded these claims by alleging the City sold Bell the Property for 18% of the value listed by the Dallas County Sheriff at the public auction—a transactional disparity indicative of fraudulent conduct between the City and Bell, and a conspiracy related to other submarket purchase prices that Bell paid for other properties acquired in the Southern Dallas/Fair Park area. Third Am. Compl. ¶¶ 20, 30. Ross alleges that mail and wire fraud were committed based on the publishing medium used for advertising the public auction and competitive bid process, the mail or electronic transfer of funds by the City to pay for those advertisements, and the mail or electronic transfer of funds used by Bell to tender the purchase price to the City. Third Am. Compl. 8, ¶ 32.

---

[2] Fed. R. Civ. P. 12(b)(6).
[3] Fed. R. Civ. P. 9(b).

**Memorandum Opinion and Order – Page 3**

## II. Standards

### A. Rule 12(b)(6) – Failure to State a Claim

The court reviews the motion to dismiss with respect to Ross's § 1983 claim under Rule 12(b)(6). To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.

1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint and not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep.*

*Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

### B. Rule 9(b) – Pleading Fraud with Particularity

The court reviews the motion to dismiss with respect to Ross's § 1964 claim for alleged RICO violations of mail and wire fraud under Rule 9(b). A dismissal for failure to plead fraud with particularity pursuant to Rule 9(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *McCall v. Genentech, Inc.,* No. 3:10-CV-1747-B, 2011 U.S. Dist. LEXIS 65912, at *7, 2011 WL 2312280, at *3 (N.D. Tex. June 9, 2011) (citing *Lovelace v. Software Spectrum Inc.,* 78 F.3d 1015, 1017 (5th Cir. 1996)). Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity. Fed. R. Civ. P. 9(b); *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Elecs., Inc. v. J.M. Huber Corp.,* 343 F.3d 719, 724 (5th Cir. 2003).

## III. Analysis

### A. Ross's § 1983 Claim

#### 1. The Parties' Contentions

The City contends that Ross did not sufficiently set forth allegations that the City promulgated or ratified a policy or custom that was the moving force behind the alleged due

process violations suffered by him to state a § 1983 claim upon which relief can be granted against the City. According to the City, Ross failed to meet the Rule 8(a)(2) facial plausibility standard. The City recites the factual allegations presented in Ross's Amended Complaint and argues that they fail to raise a reasonable inference that the City either acted pursuant to an official policy or custom, as defined by existing precedent, or unconstitutionally deprived Ross of a property interest. The City contends that Ross's allegations involve city employee actions or omissions, rather than city policymakers, and municipal liability under §1983 may not be imposed on the basis of respondeat superior.

Ross responds that "the use of the policy of the Defendant to undertake the Actual Factual Acts and Actions are reflected by the Record and are not Conclusory and were not tendered from a position of 'Responde[a]t Superior' but instead from the position of an employee compliance with work policy and procedures." Pl.'s Resp., Doc. 15. at 2-3, ¶ 2. Ross contends that his Amended Complaint contains "Actual Facts" and not "Conclusory Facts," and he points to the following allegations: (1) the City was aware Ross resided in the Property that is the subject of this suit, and (2) the City "intentionally by use of their policy" did not provide Ross with actual notice of the seal bid sale of the Property, even though the City knew that Ross had an interest in the Property. Pl.'s Resp., Doc. 15 at 2, ¶ 2.

### 2.     Municipal Liability Under § 1983

A governmental entity can be sued and subjected to monetary damages and injunctive relief under 42 U.S.C. § 1983 only if its official policy or custom causes a person to be deprived of a federally protected right. *Board of the Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A governmental entity cannot be liable for civil rights violations under a theory of respondeat superior or vicarious

liability. *Id.*; *see also Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979). Official policy is defined as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [city] lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of [city] officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents [city] policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the [city] or to an official to whom that body had delegated policy-making authority.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc); *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc). For purposes of a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts from which the court can reasonably infer that the "challenged policy was promulgated or ratified by the city's policymaker." *Groden v. City of Dallas, Texas*, 826 F.3d 280, 285 (5th Cir. 2016). "[C]ourts should not grant motions to dismiss for [the] fail[ure] to plead the specific identity of the policymaker." *Id.* (citing *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346 (2014)).

The ultimate question in deciding the sufficiency of a complaint is whether a person has alleged facts to show that a policymaker promulgated or ratified an unconstitutional policy that resulted in injury to him or her. Although a plaintiff need not offer proof of his or her allegations at the pleading stage, a plaintiff "must plead facts that plausibly support each element of § 1983 municipal liability." *Peña v. City of Rio Grande, Tex.*, 879 F.3d 613, 621 (5th Cir. 2018) (citation omitted). In other words, a plaintiff must set forth facts, or those from which the court can reasonably infer, that: "(1) an official policy; (2) promulgated by the municipal policymaker; (3) was the moving force behind the violation of a constitutional right." *Hicks-Fields v. Harris Cty.*,

860 F.3d 803, 808 (5th Cir. 2017) (footnote and citations omitted). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citations omitted).

To defeat "a motion to dismiss, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" *Balle v. Nueces Cty. Tex.*, 690 F. App'x 847, 852 (5th Cir. 2017) (quoting *Spiller v. City of Tex. City Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)). In other words, the pleadings are adequate with respect to a section 1983 claim against a city when they set forth "specific factual allegations that allow a court to reasonably infer that a policy or practice exists and that the alleged policy or practice was the moving force" for the constitutional violation asserted. *Id.* (citation omitted). Although *Spiller* is over twenty years old, its holding that allegations of an allegedly unconstitutional policy or custom of a local government may not be stated conclusorily but must set forth specific facts is still solid law, and it was recently cited with approval by the Fifth Circuit in *Peña*. 879 F.3d at 622. If a complaint does not meet the standard set forth in *Spiller*, an action cannot "proceed beyond the pleading stage." *Id.*

### 3. Discussion

After reviewing the pleadings and applicable law, the court determines that Ross has failed to state sufficient allegations that an official policy or a custom of the City caused him to be deprived of his due process rights. Ross does not reference any policy statement, ordinance, regulation, or decision that was officially adopted and promulgated by city lawmakers. At most, Plaintiff alleges that the Sheriff's conveyance of the Property to the City was done pursuant to authority vested in city employees by the city council to take and sell the property in a "Seal Bid

Process," and such authority is pursuant to "the utilization of customs and or policies." Pl.'s Third Am. Compl., Doc. 13 at 10, ¶ 24. This allegation is completely conclusory and does not refer to an official policy that vests such authority, and Ross does not argue that the Sheriff's authority to auction foreclosed properties is unconstitutional. Furthermore, in this case, the Sheriff auctioned the Property pursuant to a tax foreclosure Judgment issued by a Dallas County District Court—not pursuant to an official policy or widespread practice.

Moreover, Ross does not allege that the Sheriff's ability to auction foreclosed property and convey property to the City resulted in the due process violation described in his Amended Complaint. In other words, Ross does not contend that he suffered a due process violation because he was deprived of his Property pursuant to the foreclosure action. Ross instead alleges a procedural due process violation—that he never personally received notice that his Property would be auctioned or "struck off" to the City, despite the City knowing he resided on the Property, and the lack of personal notice deprived him of the opportunity to protect his lien interest. Pl.'s Third Amend. Compl., Doc. 13 at 6, ¶ 26. Ross, however, does not reference any official policy or custom regarding notice requirements for foreclosure proceedings.

Further, he fails to plead any widespread practice of homeowners, or others having an interest in property, failing to receive notice of such proceedings. Ross's grievance can be construed, at most, as an isolated incident resulting from the potential negligence of city employees to directly engage him in the tax foreclosure litigation and subsequent auction proceedings. "Isolated violations are not the persistent, often repeated, constant violations that constitute custom or policy." *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984) (citations omitted) (en banc). The Plaintiff's Amended Complaint is totally devoid of any pattern of incidents similar to

that of Ross in which property owners, or those having an interest in property, have been injured by an allegedly unconstitutional policy or custom.

The policy or custom relied upon to establish liability may include the inaction of official policymakers, but only when such inaction constitutes "deliberate indifference" to the rights of the plaintiff, and such indifference is a "closely related" cause of the plaintiff's injuries. *City of Canton v. Harris*, 489 U.S. 378, 388, 391 (1989). The failure or inaction "must amount to an intentional choice, not merely an unintentionally negligent oversight." *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992) (citing *City of Canton*, 489 U.S. at 390). Accordingly, municipal liability cannot be imposed against the City because of the negligence of its employees. To do so would predicate liability on a theory of respondeat superior, which is not allowed under *Monnell*. 436 U.S. at 694.

Ross's description of the alleged municipal policy or custom is too general and conclusory, and does not show the relationship between the alleged policy or custom and the underlying constitutional violation. In other words, Ross fails to allege facts from which the court can reasonably infer that a policy or custom of the City was the moving force that caused him to suffer a constitutional injury. Plaintiff, at most, has pleaded a case that reflects a "sheer possibility" that the City could be liable. A "sheer possibility" does not satisfy the pleading standard. A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 547. For these reasons, Ross has failed to state a claim upon which relief can be granted against the City regarding his § 1983 claim.

B.     Ross's § 1964 Claims

The City contends that Ross's RICO claims may not properly be brought against it because a governmental entity cannot form the required criminal intent or *mens rea* to support the predicate RICO offenses of mail and wire fraud. The court agrees.

Governmental entities cannot form the *mens rea* requirement for the criminal acts underlying RICO violations. *Gil Ramirez Group, L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 411-12 (5th Cir. 2012) (citing *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 404 (9th Cir. 1991); *Pedrina v. Chun*, 97 F.3d 1296, 1300 (9th Cir. 1996)). As the City cannot form the intent to commit a RICO violation, Ross necessarily fails to state a claim upon which relief can be granted.

In an attempt to counter the City's *mens rea* argument, Ross cites *Trugreen Landcare, LLC v. Scott*, 512 F. Supp. 2d 613, 622 (N.D. Tex. 2007), and argues that the court noted that the plaintiff had standing to bring a RICO claim against the City of Dallas and held that cities do not enjoy immunity from suit in federal court on federal claims.

Ross's reliance on *Trugreen*, however, is misplaced. That case does not establish any precedent contrary to the Fifth Circuit's holding as set forth in *Gil Ramirez Group v. Houston Independent School District* because it addresses other issues not before the court in this case. In *Trugreen*, a subcontractor hired by the City to provide ground and maintenance service sued the City in a third-party action on claims for breach of contract and a RICO violation. 512 F. Supp. 2d at 617. The City moved to dismiss the RICO claim on the basis that the court lacked jurisdiction because the plaintiff lacked standing and governmental immunity had not been waived. *Id.* at 621. The City argued that the plaintiff had not suffered a concrete financial loss, which is a standing requirement for RICO claimants, and the court disagreed with the City based on its determination

that the plaintiff had sufficiently pleaded that she lost existing contracts, resulting in millions of dollars of damages. *Id*.

Regarding the issue of immunity, the court denied the City's motion because cities do not enjoy Eleventh Amendment immunity from suit in federal court on federal claims as a general matter, and the cases cited by the City stood for the proposition that a city or governmental entity cannot be held liable under RICO because it cannot form the necessary criminal intent or *mens rea*—not that a city is immune from liability under RICO, as the City contended in its motion to dismiss. *Id*. at 621-22 (citations omitted).

In this action, the City does not contest whether Ross has standing to bring a RICO claim or contend that it is entitled to governmental immunity. The City cites the *Trugreen* opinion as precedent establishing that a city cannot form the requisite criminal intent for RICO violations. The decision in *Gil Ramirez* was published after the district court's discussion in *Trugreen* and explicitly adopts the rule discussed in *Trugreen* that governmental entities cannot be found liable for RICO violations. 786 F.3d at 412 (citing *Lancaster Cmty. Hosp.*, 940 F.2d at 404; *Genty*, 937 F.2d at 908). Ross's reliance on *Trugreen* undermines, rather than support, his position.

Even assuming that a factual basis could be set forth to adequately allege specific intent, the allegations of Plaintiff's Amended Complaint fall short. The City asserts that Ross did not allege sufficient facts that the City formed a specific intent to defraud him, or that a scheme to defraud Ross existed, as required by the elements for pleading mail fraud. The City states that Ross's factual allegations regarding the "various sub-market prices" paid by Bell in the Southern Dallas/Fair Park Area neither connect the City to those transactions aside from the City's one conveyance to him of the Property, nor establish that a fraudulent scheme took place. The City contends, at most, Ross alleges that the City used the mail, but he sets forth no other facts to satisfy

the heightened pleading standard required by Rule 9(b). In response to whether his Amended Complaint meets the Rule 9(b) standard, Ross states that he is "standing on his pleadings."

The court determines that Ross has not pleaded sufficient facts to meet the heightened pleading requirement of Rule 9(b) for the predicate acts of mail and wire fraud, which require him to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Van Velzer v. Amegy Bank*, 713 F. App'x 377, 378 (5th Cir. 2018) ("Because the predicate act for Van Velzer's RICO claim was mail fraud, he also needed to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b).") (quoting *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (quotations omitted). Ross fails to allege any fraudulent statement made or action taken by the City. He alleges that the City advertised "the Original Tax Sale and alleged 'Sealed/Competitive Bid Process'" by use of printed or electronic media or by postal mail (Doc. 13, ¶ 32(1)), but he does not attach as exhibits these advertisements, include any further explanation or allegations as to their content, or explain why the advertisements were fraudulent. Ross alleges that the City transferred funds by mail or electronically to pay for the aforementioned advertisements (Doc. 13, ¶ 32(2)), but he does not provide any underlying facts supporting the existence of these particular transactions or explain why they were fraudulent. Ross alleges that the City received payment by mail or electronically from Bell for the Property's conveyance (Doc. 13, ¶ 32(3)), but he does not allege how receipt of funds amounts to making a fraudulent statement.

Ross fails to draw any reasonable nexus between the City's mail and wire activities, and Bell's various purchases of property in the Southern Dallas/Fair Park Area for allegedly submarket prices to support his theory of a fraudulent scheme. No facts have been set forth that associate the

City with these transactions, other than the conveyance of the Property at issue. Ross further contends that the City's conveyance for "18% of its represented cost in an area of Southern Dallas" "presents major questions concerning civil fraud and criminal violations" (Doc. 13, ¶ 4), but he has failed to allege facts from which the court can reasonably infer that the City had a specific intent to defraud him in selling the Property to Bell at the price sold, or that any fraudulent statements were made in doing so. In sum, Ross's allegations for the RICO claims are conclusory and fail to meet the heightened pleading requirements of Rule 9(b).

### C. Amendment of Pleadings

In response to the City's motion to dismiss, Ross did not request to amend his pleadings in the event the court determined that he failed to state a claim. The provision of Rule 15(a)(2) of the Federal Rules of Civil Procedure that states "[t]he court should freely give leave when justice so requires" is not without limitation. The decision to allow amendment of a party's pleadings is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). In determining whether to allow an amendment of the pleadings, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

"[A]t some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Schiller*, 342 F.3d at 567 (quoting *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986)). In this action, Plaintiff has amended his pleadings twice after a motion to dismiss was filed.

In his Response to the current motion to dismiss, he asserts that his pleadings are not conclusory, that he has stated claims upon which relief can be granted, and that he stands by his pleadings with respect to his § 1964 claims. As previously stated, he did not request to amend his last pleading.[4] The court, therefore, presumes that Plaintiff has stated his "best case." *Jacquez*, 801 F.2d at 793. The record amply demonstrates that Plaintiff has had a fair opportunity to plead and present his case. As he has had a fair opportunity to correct previously identified deficiencies in his pleadings and present his "best case," the court determines that any further attempts at amendment would be futile and would unnecessarily delay resolution of this action. Accordingly, the court will not allow any further amendment of Plaintiff's pleadings.

## IV. Conclusion

For the reasons herein stated, Plaintiff has failed to set forth adequate allegations to support either of his claims in this action, and he has failed to state a claim upon which relief can be granted with respect to both claims. Accordingly, the court **grants** Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint Pursuant to Rule 9(b) and Rule 12(b)(6) (Doc. 14) and **dismisses with prejudice** this action. As required by Federal Rule of Civil Procedure 58, the court will issue judgment by separate document.

**It is so ordered** this 14th day of November, 2018.

Sam A. Lindsay
United States District Judge

---

[4] The failure to request leave to amend waives the right to raise the issue on appeal. *See United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) ("A party who neglects to ask the district court for leave to amend cannot expect to receive such a dispensation from the court of appeals.") (citation omitted).